UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X

UNITED STATES OF AMERICA,

                                    **MEMORANDUM & OPINION**
        - against -                  21-CR-81 (KAM)


JOVAN DANIELS,

            Defendant.

-------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

        Defendant Jovan Daniels is charged in a three-count

Indictment with possession of OxyContin with intent to

distribute it, in violation of 21 U.S.C. § 841; using or

carrying a firearm in relation to Count One, in violation of 18

U.S.C. § 924(c); and knowingly and intentionally possessing a

firearm, knowing that he had previously been convicted of a

felony offense, in violation of 18 U.S.C. § 922(g).  (ECF. No.

4, Indictment.)  After pleading not guilty and electing to

proceed to trial, Mr. Daniels moved pursuant to Rule 12(b)(3) of

the Federal Rules of Criminal Procedure to suppress: (1)

physical evidence seized from his person and a parked car in

which he was a back seat passenger on January 2, 2021, and (2)

his subsequent post-arrest statements.  (*See* ECF No. 24,

Defendant's Motion to Suppress ("Def. Mot.") at 1.)

1

On September 9, 2021, the court held an evidentiary hearing on Mr. Daniels's motion to suppress.  The court has considered the parties' motion papers submitted in advance of the hearing, (ECF No. 25, Gov't's Opp'n Mem. ("Gov. Mem."); ECF No. 27, Def.'s Reply ("Def. Reply")), evidence and testimony presented at the hearing, and the parties' post-hearing briefing, (ECF No. 47, Def.'s Supp. Mem. ("Def. Supp. Mem."); ECF No. 48, Gov't's Supp. Opp. ("Gov. Supp. Mem."); ECF No. 49, Def.'s Supp. Reply ("Def. Supp. Reply"); ECF No. 50 Gov't's Supp. Reply ("Gov. Supp. Reply")).

At the suppression hearing, the government called as witnesses New York City Police Department Detectives William Pugliese and Kevin McGinn, who along with two colleagues, arrested Mr. Daniels and his two companions in the vehicle at the time of his arrest on January 2, 2021.  The defendant called as a witness Ms. Janelle Gavin, one of the two companions in the car with Mr. Daniels.  In light of Detectives Pugliese's and McGinn's credible testimony and for the reasons set forth below, the court finds that the NYPD detectives' actions in arresting, searching, and interviewing Mr. Daniels on January 2, 2021 did not violate the Fourth or Fifth Amendments and, therefore, denies defendant's motion to suppress.

**BACKGROUND**

**I.   Factual Background**

At the September 9, 2021 evidentiary hearing, the government called two of the four NYPD detectives present at the January 2, 2021 arrest: Detectives Pugliese and McGinn.  In addition, the court admitted various exhibits, including photographs of Georgia Avenue, the street in East New York where the incident took place and photographs of the contraband recovered.  The court finds that detectives testified credibly and, based on their testimony and the exhibits admitted into evidence, makes the following findings of fact.

On January 2, 2021, four NYPD detectives from the Brooklyn North Violent Crime Squad were on patrol in two cars in the East New York neighborhood of Brooklyn.  (*See* September 9, 2021 Suppression Hearing Transcript ("Tr.") at 10–11, 60–63.) Detectives Michael Scoloveno and Michael Lassen were in the lead car, and Detective Pugliese was driving the second car with Detective McGinn in the passenger seat.  (*Id.* at 11, 62.)  At approximately 3:40 p.m., the detectives were traveling northbound on Georgia Avenue between Blake Avenue and Sutter Avenue, near 333 Georgia Avenue and approaching the intersection with Sutter Avenue.  (*Id.* at 11–12, 62–63.)  At this specific block of Georgia Avenue, there is only one lane of northbound traffic and two parking lanes with cars parked on both sides of

the street. (*Id.* at 19; *see also* Government Hearing Exhibits ("Gov. Ex.") 1A, 1D.)[1] On January 2, 2021, it was a relatively warm day in New York, with temperatures between 47 and 49 degrees. (*See* ECF No. 45.) Detectives Pugliese and McGinn were driving the patrol car with the windows down, consistent with the detectives' common practices while driving on patrol to better hear and see their surroundings. (Tr. at 12, 63.)

As the NYPD detectives approached the intersection of Georgia Avenue and Sutter Avenue, the lead patrol car slowed down for the red light at the intersection. (Tr. at 11–13.) The second car driven by Detective Pugliese also slowed down behind the lead car. (*Id.* at 13, 47.) As Detective Pugliese slowed his car, he smelled the odor of marijuana outside and to the left of his car from his driver's window. (*Id.* at 13.) After Detective Pugliese stopped his car, he turned to his left and observed a blue Nissan Altima (the "Altima") parked on the left side of Georgia Avenue (*i.e.*, next to the driver's side of Detective Pugliese's car (*id.* at 66)), approximately two to three feet from his driver's window. (Tr. at 13-17, 20-22, 48, 65; Gov. Exs. 1A, 1D, 2.) Detective Pugliese recognized the individual sitting in the driver's seat of the Altima as Miguel

---

[1]     At the beginning of the evidentiary hearing, the parties stipulated to the admission of Government Exhibits 2 through 11 into evidence, which the court received into evidence. (Tr. at 5-6.) The government also admitted, without objection, a stipulation from Detective Lassen. (Gov. Ex. 15.)

Andino -- known to Detective Pugliese as a member of a violent
gang operating in the area -- and Detective Pugliese also
observed Mr. Andino exhale a thick plume of white smoke, which
did not appear to Detective Pugliese to be tobacco cigarette
smoke based on his training and experience.  (Tr. at 13, 24-25,
28.)  From Detective Pugliese's vantage point inside his car, he
could see that Mr. Andino's window was open.  (*Id.* at 24.)

After observing Mr. Andino smoking and smelling the
marijuana odor, Detective Pugliese alerted Detective McGinn that
he intended to get out of the car to approach the Altima.  (Tr.
at 56, 64.)  Detective McGinn, who was sitting in the front
passenger seat of the unmarked police car, recalled being
alerted by Detective Pugliese but Detective McGinn did not smell
the odor of marijuana and he did not observe anyone inside the
Altima smoking marijuana.  (*Id.* at 65.)

After exiting the police car, Detective Pugliese
approached the driver's side of the Altima from the driver's
side of his vehicle to enforce the then-existing New York state
law prohibiting the possession and use of marijuana.[2]  (Tr. at
26, 50.)  Detective McGinn walked behind the police car in which
he had been patrolling and approached the front passenger side

---

[2]    Adult recreational use of marijuana was legalized in the State of New
York on March 31, 2021 by the Marijuana Regulation & Taxation Act.  *See
generally* Laws & Regulations, New York State Office of Cannabis Management,
https://cannabis.ny.gov/laws-regulations (last visited Oct. 1, 2021).

seat of the Altima where Janelle Gavin -- Mr. Andino's girlfriend and the owner of the Altima -- was sitting.  (*Id.* at 27, 31, 67, 99-100.)  As Detective McGinn walked towards the Altima, he smelled the odor of marijuana.  (*Id.* at 67.)

As Detective Pugliese approached the Altima, he smelled a stronger odor of marijuana, and he observed Mr. Andino with a lit marijuana cigarette in his right hand.  (Tr. at 26.) In addition to the odor, Detective Pugliese recognized the lit cigarette as a marijuana cigarette by the color of the wrapping paper and the absence of a filter.  (*Id.* at 26-27; *see also* Gov. Ex. 7 (photo of marijuana cigarette).)

When Detective Pugliese approached the Altima's front driver's side door, Mr. Andino said to him, in sum and substance, "we're just smoking some weed, Officer."  (Tr. at 27.)  When Detective McGinn was within approximately a foot of the passenger side of the car near Ms. Gavin, Detective McGinn also observed Mr. Andino with a lit marijuana cigarette in his hand.  (*Id.* at 67-68, 69.)  From Detective McGinn's vantage point, he observed two silver packages on the back seat near where Mr. Daniels was sitting that Detective McGinn recognized as packages for marijuana, and also cash.  (*Id.* at 69-70, 74-75; *see* Gov. Ex. 7 (photo of marijuana cigarette and marijuana packages from the back seat of the Altima).)

Both Detectives Pugliese and McGinn credibly articulated their observation-based beliefs that the occupants of the Altima were smoking marijuana in violation of state law, and Detective McGinn observed additional contraband in plain view on the back seat of the Altima. (*Id.* at 27, 39–40, 70; *see also* Gov. Ex. 7.) Both detectives testified that they both intended to search the Altima for further contraband. (*Id.*) To conduct the search, Detective Pugliese and Detective McGinn asked the occupants of the Altima to get out of the car. (*Id.* at 28, 70.) Detective Pugliese asked Mr. Andino to get out of the car and frisked Mr. Andino for weapons, in light of Mr. Andino's known membership in a violent gang. (*Id.* at 28.) Detective Pugliese did not find any contraband on Mr. Andino's person, and thereafter he directed Mr. Andino stand with Detectives Scoloveno and Lassen, who had just arrived at the Altima. (*Id.* at 28, 71, 78.) Detective McGinn asked Ms. Gavin to step out of the Altima, and he checked her outer pockets and looked for any indications that she might be carrying a weapon. (*Id.* at 71.) Detective McGinn did not find any weapons on Ms. Gavin and asked her to stand at the rear of the passenger side of the car. (*Id.*)

After Mr. Andino and Ms. Gavin were searched, Detective Pugliese then asked Mr. Daniels to exit the car in order for the detectives to search the vehicle. (Tr. 28.)

7

Detective Pugliese conducted a pat down of Mr. Daniels and felt
an object in the defendant's pocket that he believed was a
firearm magazine.  (*Id.* at 28, 30.)  Detective Pugliese asked
the defendant what the object was, and the defendant responded
that it was his keys.  (*Id.* at 29.)  Detective Pugliese did not
believe the object felt like keys, and he retrieved the object
from the defendant's pocket, discovering that it was a loaded
magazine for a firearm.  (*Id.; see* Gov. Ex. 5 (photo of magazine
from Mr. Daniels's pocket).)  Detective Pugliese alerted the
other detectives and placed the magazine on the roof of the
Altima.  (*Id.* at 29, 72.)  After discovering the loaded
magazine, the detectives placed all occupants in the vehicle in
handcuffs for safety reasons.  (*Id.* at 29, 72.)  Detective
Pugliese then continued the pat down of Mr. Daniels and
discovered a firearm in the defendant's waistband, which
Detective Pugliese also placed on the roof of the Altima.  (*Id.*
at 29–30, 72; *see* Gov. Ex. 5 (photo of magazine and firearm.)
After arresting the defendant, Detective Pugliese could see in
plain view the same two silver packages observed by Detective
McGinn on the back seat of the Altima, and that Detective
Pugliese, like Detective McGinn, recognized from his training
and experience as containing marijuana.  (*Id.* at 30–31; *see* Gov.
Ex. 7.)  The detectives placed all three occupants of the car
under arrest -- the defendant for possessing the firearm and

magazine, and Mr. Andino and Ms. Gavin for possessing marijuana. (*Id.* at 30, 72.)

In contrast to the detectives' testimony, according to Ms. Janelle Gavin,[3] the sole witness called by defendant, on January 2, 2021, Ms. Gavin and her boyfriend Miguel Andino were parked in the Altima on Georgia Ave, Brooklyn, New York, near the vicinity of 333 Georgia Avenue. (Tr. at 99-101.) Ms. Gavin testified that she and Mr. Andino were alone in the Altima for approximately 30 minutes smoking marijuana with the windows up and car vents turned on around 3:00 pm on January 2, 2021. (*Id.* at 101.) Ms. Gavin and Mr. Andino stopped smoking marijuana at some point and put the marijuana cigarette in an ashtray in the cup holder before defendant Daniels entered the Altima. (*Id.* at 101-03.) Approximately fifteen minutes after Ms. Gavin and Mr. Andino stopped smoking marijuana, the NYPD detectives stopped adjacent to the Altima and proceeded to ask each occupant in the Altima to exit the car one at a time. (*Id.* at 105-06, 108-110.) Ms. Gavin testified that when the detectives exited the police car and approached the Altima, they immediately, without any conversation, opened the driver's side door and asked Mr. Andino to exit the vehicle. (*Id.* at 108-09.) At the time when the police car stopped adjacent to the Altima, Ms. Gavin testified

---

[3]     Ms. Gavin was appointed CJA counsel and was represented by Michael Hueston, Esq. (*See* ECF No. 26.)

that there was no marijuana odor inside or outside the vehicle. (*Id.* at 106.)  When Ms. Gavin was asked to step outside the car and while she was being arrested, she could not smell any marijuana.  (*Id.* at 109-110.)  For reasons explained below, the court finds Ms. Gavin's testimony not credible due to the numerous inconsistencies, her likely bias given her close relationship with Mr. Andino and defendant, and her impaired perceptions at the time of the incident due to her smoking marijuana.

After the defendant, Mr. Andino, and Ms. Gavin were placed under arrest, the detectives called NYPD dispatch to request assistance in transporting them back to the precinct. (Tr. at 31, 72.)  Detective Pugliese drove his police car back to the precinct, and Detective McGinn drove the Altima back to the precinct.  (*Id.* at 31, 72.)  During the drive to the precinct, Detective McGinn smelled the odor of marijuana in the Altima and observed a marijuana cigarette in the ashtray in the center console.  (*Id.* at 72-73.)  Detective McGinn also observed the silver packages of marijuana and cash on the backseat of the car that he had previously observed while standing outside the Altima's passenger side window.  (*Id.* at 74; *see also* Gov. Ex. 7.)

At the precinct, Detective Pugliese assisted Detective McGinn in searching the Altima.  (Tr. at 31-32, 75.)  In the

10

course of the search, detectives retrieved a partially smoked marijuana cigarette in the ashtray in the front console and, from the back seat, a plastic bag containing 35 Oxycodone pills, cash, and two packages containing marijuana.  (*Id.* at 73, 75–77, 36; *see* Gov. Exs. 7, 8, 9 (photographs of the evidence recovered).)  The detectives also located a Virginia license plate that was not registered to the Altima in the trunk of the car, and they determined that the license plate on the car was a "forged New Jersey temporary tag."  (Tr. at 35–36, 77–78; Gov. Exs. 6, 10.)

## II.  Procedural History

A sealed complaint and affidavit were filed on January 15, 2021.  (ECF No. 1, Sealed Complaint.)  On January 15, 2021, Magistrate Judge Lois Bloom signed an arrest warrant for defendant for "distributiong [sic] and possessing with intent to distribute oxycodone hydrochloride on or about Jan. 2, 2021, in violation of 21 U.S.C. § 841(b)(1)(C); using, carrying and possessing a firearm in furtherance of a drug trafficking crime on or about January 2, 2021, in violation of 18 U.S.C. § 924(c); being a felon in possession of a firearm on or about January 2, 2021, in violation of 18 U.S.C. § 922(g)."  (*See* ECF No. 1; Dkt. Entry 1/15/2021.)

Following his arrest by the NYPD detectives on January 2, 2021, the defendant was released on bail with respect to

state charges and then arrested by federal authorities on
January 19, 2021 on the complaint.  (ECF No. 3, Pretrial
Memorandum in Support of Detention Order, at 3.)  Following his
arrest by federal authorities, agents advised Mr. Daniels of his
*Miranda* rights, after which defendant acknowledged that the gun
and OxyContin pills were his.  (*Id.* at 3.)  An indictment was
filed on February 10, 2021.  (ECF No. 4, Indictment.)

On June 21, 2021, Mr. Daniels moved pursuant to Rule
12(b)(3) of the Federal Rules of Criminal Procedure to suppress
(1) physical evidence seized from his person and the car in
which he was a passenger on January 2, 2021, and (2) his
subsequent post-arrest statements.  (*See generally* Def. Mot. at
1.)  In support of his motion to suppress, defendant submitted a
sworn declaration from Ms. Gavin (ECF No. 24-1, ("Gavin
Decl.")), to dispute the arresting detective's assertion that he
approached the car because he observed the occupants smoking
marijuana and smelled the odor of marijuana.  On July 6, 2021,
the government filed its opposition to Mr. Daniels's motion to
suppress.  (ECF No. 25.)  The court scheduled an evidentiary
hearing to hear testimony and receive evidence regarding Mr.
Daniels's pending motion to suppress.  (*See* Minute Entry
7/21/2021; Dkt. Orders 8/3/2021, 8/4/2021.)

Before the evidentiary hearing and following several
productions of discovery to defendant, the government submitted

several motions *in limine* to preclude certain cross-examination of government witnesses and requesting the court to take judicial notice of the weather in Brooklyn on January 2, 2021, the day the defendant was arrested.  (*See* ECF Nos. 30, 40, 41.) On September 8, 2021, the court issued an Order granting the government's motions *in limine* and taking judicial notice of the weather in Brooklyn on January 2, 2021, which was "between 47 and 49 degrees Fahrenheit" at the time of the incident giving rise to the prosecution of Mr. Daniels.  (*See* ECF No. 45.)

On September 9, 2021, the court held an evidentiary hearing on Mr. Daniels's motion to suppress.  (Minute Entry 9/10/2021.)  Following the evidentiary hearing, the parties requested an opportunity to submit post-hearing briefing, which the court granted.  (*Id.*)

## APPLICABLE LAW

### I.   The Fourth Amendment

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures."  U.S. Const. Amend. IV.  When a defendant moves to suppress evidence that he contends is derived from an illegal search, he "bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."  *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) (citations omitted).

13

A. Reasonable Suspicion

"Under *Terry v. Ohio*, 392 U.S. 1 (1968), police may briefly detain an individual for questioning if they have a reasonable suspicion that criminal activity is afoot, and may frisk him if they reasonably believe he is armed and dangerous." *United States v. Elmore*, 482 F.3d 172, 178 (2d Cir. 2007). An officer properly has reasonable suspicion when he or she is "aware of specific articulable facts, together with rational inferences from those facts that reasonably warrant suspicion." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). "[R]easonable suspicion is determined based on the totality of the circumstances but 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *Elmore*, 482 F.3d at 179 (quoting *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002)).

B. Probable Cause

Probable cause exists where the arresting officer has "knowledge or reasonably trustworthy information . . . sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Walxzyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007). This standard is a "practical" one that analyzes the "factual and practical considerations of everyday life on which

reasonable and prudent men, not legal technicians, act."
*Maryland v. Pringle*, 540 U.S. 366, 270 (2003).  Because the
probable cause standard is fluid and contextual, a court must
examine the totality of the circumstances of a given arrest from
the perspective of a reasonable police officer in light of his
training and experience.  *United States v. Delossantos*, 536 F.3d
155, 159 (2d Cir. 2008) (citations omitted).

C. <u>Automobile Exception</u>

Under the "automobile exception" to the Fourth
Amendment warrant requirement, police may conduct a warrantless
search of a "readily mobile motor vehicle if probable cause
exists to believe the vehicle contains contraband or other
evidence of a crime."  *United States v. Gaskin*, 364 F.3d 438,
456 (2d Cir. 2004); *see also United States v. Howard*, 489 F.3d
484, 492 (2d Cir. 2015) (same).  So long as "it is reasonable to
believe evidence relevant to the crime of arrest might be found
in the vehicle," *Arizona v. Gant*, 129 S. Ct. 1710, 1713 (2009)
(internal quotation marks omitted), the justification for the
warrantless search "does not vanish once the car has been
immobilized."  *United States v. Johns*, 469 U.S. 472, 484 (1985).

"The scope of a warrantless search of an automobile
. . . is defined by the object of the search and the places in
which there is probable cause to believe that it may be found."
*United States v. Ross*, 456 U.S. 798, 824 (1982).  When the

police possess probable cause to believe a vehicle contains
contraband, "they may conduct a warrantless search of every part
of the vehicle and its contents, including all containers and
packages in the vehicle." *United States v. Miller*, 265 F. App'x
5, 8 (2d Cir. 2008) (summary order) (quoting *United States v.
Cruz*, 834 F.2d 47, 51 (2d Cir. 1987)).  Even if a vehicle is
apparently immobilized -- as when, for example, the government
has its driver in custody -- the vehicle retains its inherent
"ready mobility" and no showing of actual mobility or exigent
circumstances is relevant or required to justify a warrantless
search.  *United States v. Howard*, 489 F.3d 484, 492-94 (2d Cir.
2007).  Furthermore, courts in this Circuit have agreed that,
under the automobile exception, "a generalized smell of
marijuana provides police with the right to search a defendant's
vehicle and any containers within the vehicle where marijuana
might be stored." *United States v. Spain*, No. 18-cr-569 (CM),
2019 WL 948814, at *3 (S.D.N.Y. Feb. 13, 2019) (internal
quotation marks omitted) (collecting cases).

## DISCUSSION

        With the foregoing legal principles in mind and for
the reasons set forth below, the court concludes that the
credible testimony and evidence elicited at the September 9,
2021 evidentiary hearing establish that the NYPD detectives had
reasonable suspicion to approach the Altima and developed

16

probable cause to pat down and arrest individuals in the vehicle following the officers' observations and interactions with the occupants in the Altima.  Accordingly, the court denies Mr. Daniels's motion to suppress the physical evidence seized from his person and the Altima and his subsequent post-arrest statements.

Mr. Daniels argues that the NYPD detectives did not have "a credible, articulable reasonable suspicion that criminal activity was 'afoot' at the time they approached [the Altima], nor did they have probable cause to arrest anyone in the vehicle at the time."  (Def. Supp. Mem. at 2.)  Defendant further argues that even if the detectives' testimony were credible and they had reasonable suspicion and/or probable cause to arrest, "such suspicion and cause was solely with respect to the person in the driver's set . . . and did not provide a constitutional, legal basis for either removing the defendant from the automobile, seizing his person and frisking him, or generally searching the vehicle."  (*Id.*)  The court addresses the defendant's arguments below and concludes that, based on the totality of the circumstances, the NYPD detectives had reasonable suspicion to approach the Altima, which rapidly developed into probable cause to arrest the occupants, pat down their persons, and search the vehicle pursuant to exceptions under the Fourth Amendment's warrant requirement.

I.    **Reasonable Suspicion to Approach the Altima**

As an initial matter, a *Terry* stop likely occurred when Detective Pugliese, who had smelled marijuana and observed Mr. Andino exhale what he believed to be marijuana smoke, exited his patrol car, approached the parked, idling Altima and ordered Mr. Andino to exit the Altima.  *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (A *Terry* stop, or a "seizure," occurs only when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."); *see, e.g.*, *United States v. Lopez*, 432 F. Supp. 3d 99, 110 (D. Conn. 2020) (A "*Terry* stop began when Officer Rivera exited his patrol car and approached Lopez's vehicle while shouting instructions".).  Under these circumstances, a reasonable person in Mr. Andino's and defendant's position would not believe they were free to leave. Thus, because a *Terry* stop occurred, the detectives were required to have, and did have, reasonable suspicion that criminal activity was afoot.

Applying the legal principles above and upon review of the totality of the circumstances, the undisputed facts establish Detective Pugliese's reasonable suspicion that defendant and defendant's companions may have been engaged in criminal activity while in the Altima.  It is undisputed that Ms. Gavin and Mr. Andino were smoking marijuana for a period of

time in the Altima with the air circulation system on during the
afternoon of January 2, 2021, while the Altima was parked on
Georgia Avenue.  Further, it is undisputed that Mr. Daniels had
joined Ms. Gavin and Mr. Andino when the NYPD detectives were
driving unmarked patrol cars northbound on Georgia Avenue near
333 Georgia Avenue and approaching the intersection with Sutter
Avenue.  Government exhibits admitted at the evidentiary hearing
confirm that this particular section of Georgia Avenue was a
narrow street with one lane of northbound traffic and cars
parked on both sides of the street.  (*See* Gov. Exs. 1A, 1D.)  As
the NYPD police car containing Detectives Pugliese and McGinn
slowed down at a red light at the intersection of Georgia Avenue
and Sutter Avenue, it is undisputed that Detective Pugliese
smelled the odor of marijuana through his open car door window
and observed the smoking of what he suspected was marijuana in
the parked Altima.[4]  Finally, it is undisputed that Detective
Pugliese alerted Detective McGinn that he intended to get out of
the police car to approach the Altima.  Accordingly, the
undisputed facts establish that the detectives had reasonable
suspicion to approach the Altima.

---

[4]      Defendant contests Detective Pugliese's statement that he observed Mr.
Andino exhale a plume of white smoke (Def. Supp. Mem. at 3), but does not
appear to contest the fact that the original affidavit supporting the
application for arrest noted that Detective Pugliese observed the Altima
parked in front of Georgia Avenue, "in which the occupants appeared to be
smoking marijuana."  (ECF No. 1, Complaint and Affidavit of Matthew Wiedemer
("Wiedemer Aff.") ¶ 3.)

Turning to the disputed facts, the material disputed facts to be resolved at the evidentiary hearing related to whether the detectives could credibly demonstrate that they had a reasonable basis to approach the Altima, and whether Ms. Gavin would credibly testify that no marijuana odor from the Altima could be detected by the detectives.  Based on the following credibility findings, the court finds that the NYPD detectives had articulable reasonable suspicion to approach the Altima because they credibly believed that criminal activity was afoot (*i.e.*, that then-existing New York state laws prohibiting use and possession of marijuana were being violated).

Here, the detectives' credible testimony elicited at the evidentiary hearing established that the detectives' approach to the Altima was supported by reasonable suspicion. At the suppression hearing, Detective Pugliese explained that his police vehicle came to a stop just a few feet from the Altima where, with his window down, he smelled the odor of marijuana. (Tr. at 13, 20, 48, 65; Gov. Exs. 1A, 1D, 2.) Consistent with Detective Pugliese's testimony, defense witness Ms. Gavin also testified that the police car was "at most five feet" away from the Altima, and that she and Mr. Andino had been smoking marijuana for approximately thirty minutes in the Altima.  (Tr. at 101, 107-08, 123; ECF No. 24-1, Declaration by Janelle Gavin ¶ 3.)  From this close distance, Detective

Pugliese credibly testified that he "smelled the odor of marijuana emanating from the left side of my vehicle" and "observed a blue sedan with the driver exhaling a plume of smoke from his mouth."[5]  (Tr. at 13:18-24.)  Moreover, although Detective McGinn did not initially detect the marijuana odor, he explained that as he approached the Altima following Detective Pugliese, he smelled marijuana.  (*Id.* at 67.)

Based on the totality of the circumstances, the court concludes that the detectives' approach to the Altima was supported by reasonable suspicion.  The Second Circuit has explained that the smell of marijuana odor can provide an "objective basis for suspecting legal wrongdoing."  *See United States v. Jenkins*, 452 F.3d 207, 214 (2d Cir. 2006) (holding that the smell of marijuana provided an "independent basis for continuing to detain" the car and its occupants (citation omitted)).

---

[5]     Defendant asserts that Detective Pugliese's testimony regarding the "plume" of white smoke he observed is inconsistent with the statements provided to the FBI agents and those contained in the affidavit supporting the arrest warrant application to the extent that the appearance of the "plume" of smoke was not mentioned in the agent's affidavit.  (*See* Def. Supp. Mem. at 3-4.)  Nevertheless, even if Detective Pugliese's statement regarding his observation of the "plume" of white smoke was mistaken, "a mistake of fact does not undermine the existence of reasonable suspicion."  *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009); *see also United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006) ("The constitutional validity of a stop is not undermined simply because the officers who made the stop were mistaken about relevant facts.").  Moreover, the agent's affidavit need not identify all the facts regarding the defendant's arrest.

Here, Detective Pugliese's detection of marijuana odor (which was soon thereafter detected by Detective McGinn when he approached the Altima), provided a basis for reasonable suspicion that criminal activity was afoot. *See, e.g.*, *United States v. Watson*, No. 20-cr-346 (JSR), 2021 WL 535807, at *5 (S.D.N.Y. Feb. 11, 2021) (finding reasonable suspicion "based on the fact that, while standing 'pretty close' to [defendant], the officers, already suspicious about the shape and wrapping of the cigar, began to detect the smell of marijuana"); *United States v. Garcia*, No. 18-cr-178 (AT), 2018 WL 3407707, at *4 (S.D.N.Y. June 5, 2018) (finding reasonable suspicion where the smell of marijuana provided an "objective basis for suspected legal wrongdoing"); *United States v. Green*, No. 14-cr-6038 (EAW) (JWF), 2017 WL 9730254, at *6 (W.D.N.Y. Nov. 3, 2017) ("[T]he reasonable suspicion standard appears to have been easily satisfied when Trooper Sitowski first approached the passenger side of the Cadillac and detected a strong odor of fresh marijuana coming from the inside of the car"), *report and recommendation adopted*, No. 14-cr-6038 (EAW), 2018 WL 1136928 (W.D.N.Y. Mar. 2, 2018).  Indeed, Detective Pugliese's credible testimony that in addition to smelling marijuana, he also observed Mr. Andino exhaling a plume of marijuana smoke further bolsters the detectives' reasonable suspicion justifying their approach of the Altima.  (*See* Tr. at 13.)

22

Furthermore, the court finds that the testimony of defense witness Ms. Gavin, asserting that the odor of marijuana could not be detected outside the Altima is not credible because she is not competent to testify what someone else could smell, and due to her inability to testify what could be smelled outside the Altima when she was still within it, the numerous inconsistencies in her testimony, her likely bias given her close relationship with Mr. Andino and defendant, and her impaired perception at the time of the incident due to her smoking marijuana.  First, Ms. Gavin repeatedly and incorrectly identified Detectives Scoloveno and Lassen as the officers who first approached the Altima, when Detectives Pugliese and McGinn were the actual officers who first approached and questioned the occupants in the Altima.  Specifically, Ms. Gavin testified that Detective Scoloveno first approached Mr. Andino; that Detective Scoloveno told Mr. Andino to get out of the car; and that Detective Scoloveno found the gun in the defendant's possession. (*See* Tr. 126-27 (identifying Detectives Scoloveno and Lassen as the arresting officers).)  Second, the fact that Ms. Gavin is Mr. Andino's girlfriend and defendant's friend also diminishes her credibility due to her potential bias or interest in testifying.  (*Id.* at 110-111 (confirming that Mr. Andino is her boyfriend and defendant is her friend).)  Finally, although Ms. Gavin asserts that her perceptions were not altered when she

undisputedly was smoking marijuana proximate to the time of her police encounter on January 2, 2021 (*see id.* at 116:5-7), the court finds Ms. Gavin's assertion untenable, and a further reason to discredit Ms. Gavin's testimony.

For the foregoing reasons, the court concludes that the totality of the circumstances presented detectives Pugliese and McGinn with articulable and specific facts that led them to reasonably believe the occupants of the Altima may be involved in criminal activity.  Thus, the detectives had reasonable suspicion to approach the Altima.[6]

## II.  Probable Cause to Search the Altima and Arrest the Occupants of the Altima

Investigative stops can lead to lawful arrests where "the existence of a probable cause sufficient to support an arrest . . . develop[s] during the course of a stop based on reasonable suspicion." *United States v. Oates*, 560 F.2d 45, 63 (2d Cir. 1977); *see also United States v. Brockington*, 378 F. App'x 90, 91 (2d Cir. 2010) (summary order) ("[R]easonable

---

[6]    The court acknowledges that since the defendant's arrest on January 2, 2021, the state of New York has revised its laws regarding the recreational use of marijuana.  At the time of defendant's arrest on January 2, 2021, however, it appears that possession of marijuana was unlawful under New York law.  *See* N.Y. Penal Law § 221.05.  On March 31, 2021, New York legalized the possession of up to 3 ounces of marijuana and up to 24 grams of marijuana concentrate for adults who are at least 21 years old, among many other reforms.  *See* New York Office of Cannabis Management, Laws & Regulations, (available at: https://cannabis.ny.gov/laws-regulations).  In any event, at the time of defendant's arrest in January 2021, and at the present time, marijuana may not be consumed in a vehicle.  New York law prohibits the "consumption of cannabis" in a car "located upon the public highways or right-of-way public highway."  N.Y. Veh. & Traf. Law § 1227.

suspicion may develop into probable cause based on events unfolding during an investigative stop" (citing *United States v. Vasquez*, 638 F.2d 507, 522 (2d Cir. 1980)).  An officer has probable cause to arrest someone when the officer has "reasonably trustworthy information as to [the] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).  When courts assess whether a police officer had probable cause to arrest, they consider "whether the facts known by the arresting officer at the time of the arrest objectively provided cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006).

Here, the court concludes that the detectives had reasonable suspicion to approach the Altima, as discussed above, during which probable cause developed, which justified the officers' arrest of the occupants and the search of the Altima, when the detectives observed Mr. Andino with a lit marijuana cigarette, confirmed the marijuana smell was emanating from the Altima, and saw what appeared to be narcotics in the vehicle in plain view, including the marijuana cigarette in the center console and packets of marijuana in the back seat.  The credible testimony elicited at the evidentiary hearing confirmed as follows: When Detective Pugliese arrived at the Altima's

driver's side window, he observed Mr. Andino with a lit
marijuana cigarette in his right hand and Mr. Andino admitted he
was smoking marijuana when he said, in sum and substance, "We're
just smoking some weed, Officer."[7]  (Tr. at 27.)  Detective
Pugliese recognized the lit cigarette as a marijuana cigarette
by the color of the wrapping paper, the absence of a filter, and
the odor.  (*Id.* at 26-27.)  Detective McGinn also testified that
he observed Mr. Andino with a lit marijuana cigarette in his
hand.  (*Id.* at 67-68, 69.)  And Detective McGinn explained that,
from his vantage point at the Altima's front passenger side
window, he could also smell the marijuana smoke and see two
packages in the back seat of the car that he recognized as
containing marijuana.  (Tr. at 69-70, 74-75.)

With respect to a search of the vehicle, the court
concludes that, based on the credible testimony by the
detectives presented at the evidentiary hearing, they had
sufficient probable cause to search the Altima for other
contraband.  *See United States v. Goolsby*, 820 Fed. App'x 47, 49
(2d Cir. 2020) (summary order) (holding there was probable cause
to search the defendant's vehicle and any containers in which

---

[7]     Even excluding the reference to "weed" in Mr. Andino's statement (*see*
Def. Supp. Mem. at 5-6), the court concludes that the totality of the
circumstances involving the odor of marijuana and the observation of a lit
marijuana cigarette and marijuana packages in the back seat of the Altima
provide sufficient probable cause to reasonably believe that defendant and
occupants in the Altima had unlawful possession of marijuana.

26

marijuana could be stored where the officer smelled burnt

marijuana and the defendant said he had been smoking "earlier").

Specifically, under the automobile exception, based on

a generalized smell of marijuana, police officers may search the

defendant's vehicle and any containers where marijuana may be

discovered.  *See, e.g.*, *United States v. Whitlock*, No. 20-cr-17,

2021 WL 1439846, at *7 (D. Vt. Apr. 16, 2021) ("The smell of

marijuana established probable cause for federal law

enforcement's search of the [Nissan] Sentra under the automobile

exception."); *United States v. Spain*, No. 18-cr-569 (CM), 2019

WL 948814, at *3 (S.D.N.Y. Feb. 13, 2019) (probable cause to

search vehicle and contents in the vehicle under the automobile

exception if officers detected the smell of marijuana emanating

from a car); *United States v. Sanders*, No. 19-cr-125, 2021 WL

81654, at *2 (W.D.N.Y. Jan. 11, 2021) (probable cause to search

a vehicle where the officer smelled marijuana emanating from the

vehicle, was informed by a co-defendant that he was smoking

marijuana earlier, and observed defendant move in a slow,

cautious way); *United States v. Mack*, No. 17-cr-6159 (EAW)(JWF),

2018 WL 8898465, at *7 (W.D.N.Y. Nov. 29, 2018) ("[T]he smell of

marijuana gave the officers probable cause to search any area of

the Sedona where marijuana could be found"), *report and*

*recommendation adopted*, No. 17-cr-06159 (EAW), 2019 WL 2590741

(W.D.N.Y. June 25, 2019).  Indeed, the Second Circuit has

explained that where, as here, "a marijuana cigarette was seen in the open ashtray" of a car, there is "a fair probability that contraband or evidence of a crime would be found" elsewhere in the vehicle. *United States v. Carter*, 173 F. App'x 79, 81 (2d Cir. 2006) (summary order).  Thus, because Detectives Pugliese and McGinn both smelled and observed marijuana in the Altima, there was probable cause to search the Altima for evidence of contraband under the automobile exception. (*Id.* at 26–27, 67–68, 69.)

Second, the court concludes that credible evidence established that the detectives had probable cause to arrest defendant and the occupants of the vehicle for the unlawful possession of marijuana.[8]  Detective McGinn credibly testified that he observed two silver packages containing what he believed to be marijuana in the back seat of the Altima where Mr. Daniels was sitting. (Tr. at 69–70, 74–75.)  Furthermore, both detectives testified that they smelled the odor of marijuana and observed Mr. Andino with a lit marijuana cigarette. (*Id.* at 26–27, 67–68, 69); *see United States v. Bignon*, 813 F. App'x 34, 37

---

[8]    As discussed above, the January 2, 2021 arrest of defendant and the occupants of the Altima predated recent changes to the New York Penal Code regarding the possession of marijuana. *See United States v. Sayles*, No. 19-cr-186 (RJA) (MJR), 2021 WL 3195016, at *15 n.20 (W.D.N.Y. May 6, 2021) (concluding that probable cause existed to arrest defendant for possession of marijuana because the arrest predated the recent changes to New York law regarding marijuana possession), *report and recommendation adopted*, No. 19-cr-186, 2021 WL 3191886 (W.D.N.Y. July 28, 2021).

(2d Cir. 2020) (summary order) (probable cause to arrest for possession of marijuana arose where officers believed defendant was smoking marijuana because of the color of the smoke, the smell of the smoke, and defendant's behavior when he saw a police officer); *United States v. Echevarria*, 692 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) (probable cause to arrest defendant based on smell and sight of marijuana); *United States v. Marley*, No. 16-cr-374 (VEC), 2017 WL 4998199, at *9 (S.D.N.Y. Oct. 31, 2017) (probable cause to arrest defendant for possession of marijuana where interior of his vehicle smelled like marijuana), *aff'd*, 800 F. App'x 4 (2d Cir. 2020).  As experienced detectives with narcotics training (*see* Tr. at 10:10-12, 61:13-15), Detectives Pugliese and McGinn had probable cause, based on the facts present during their January 2, 2021 interaction with Mr. Daniels and his companions, discussed above, to arrest defendant and the occupants of the Altima for unlawful marijuana possession.

With respect to automobile passengers, the Supreme Court has explained that "a car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing."  *Maryland v. Pringle*, 540 U.S. 366, 373 (2003) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 304-05 (1999)); *see also United States v. Patrick*, 899 F.2d 169, 172 (2d Cir. 1990)

(holding that after drugs were discovered in defendant's
backpack, agents had reasonable basis to believe that co-
defendant "was not just a mere innocent traveling companion but
was traveling and acting in concert" with defendant).  Here, the
court concludes that an objectively reasonable officer could
conclude, based on the facts present during the January 2, 2021
encounter discussed above, that there was probable cause to
believe defendant and the occupants of the Altima "committed the
crime of possession of [marijuana], either solely or jointly."
*Pringle*, 540 U.S. at 372; *see United States v. Pabon*, 871 F.3d
164, 174 (2d Cir. 2017) (In evaluating probable cause, "we
consider the circumstances from the perspective of an
objectively reasonable police officer, recognizing that the
officer is entitled to draw reasonable inferences on the basis
of his prior experience.").

For the foregoing reasons, based on the credible
testimony and evidence admitted at the evidentiary suppression
hearing, the court concludes that Detectives Pugliese and McGinn
had sufficient probable cause to search the Altima and arrest
defendant and the occupants for unlawful possession of marijuana
in violation of then-existing New York law.

### III. Search of Defendant Incident to His Arrest

Because the detectives had probable cause to arrest
defendant and the occupants of the Altima, the court concludes

that the detectives also had authority to conduct a protective pat down of defendant and the other occupants.  As an initial matter, the Second Circuit has explained that during a lawful stop, "a police officer may take reasonable steps to ensure safety" such as ordering "the driver and passengers out of the car, even if he does not have a reason to search the car or its occupants." *United States v. Weaver*, 9 F.4th 129, 143 (2d Cir. 2021) (en banc).  Thus, notwithstanding the detectives' lawful authority to search the Altima under the automobile exception discussed above, the detectives were also authorized to order both Mr. Andino and the passengers of the Altima to exit the vehicle during the lawful stop.

Detective Pugliese had authority to conduct a protective pat down of defendant because Detective Pugliese had probable cause to arrest defendant for unlawfully possessing contraband including marijuana in violation of then-existing New York law.[9]  A search incident to arrest is fully justified if there is "probable cause when the defendant is put under arrest

---

[9]     Defendant notes that Detective Pugliese had the "discretion" to issue a summons based on the violation of marijuana laws (*see* Def. Supp. Mem. at 6), but does not, and cannot, dispute that a marijuana violation permits law enforcement to effectuate an arrest.  *See People v. Morgan*, 781 N.Y.S.2d 652, 653 (2d Dep't 2004) (An "officer had probable cause to arrest the defendant either for the class B misdemeanor of criminal possession of marijuana in the fifth degree . . . or for the 'petty offense' of unlawful possession of marijuana" after smelling a strong odor of marijuana emanating from defendant's car and observing remains of marijuana cigarettes in the ashtray).

to believe that an offense has been or is being committed."
*United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987).  As
discussed above, the facts and circumstances of the January 2,
2021 incident were sufficient to cause an objectively reasonable
officer to believe that the defendant had committed a crime.
(*See supra* Discussion II.)  Thus, once Detective Pugliese
acquired the probable cause to arrest defendant, he was
permitted to conduct a protective search of the defendant and
the vehicle, and a full search incident to arrest.  *See United
States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) ("[O]nce the
police had probable cause to stop and arrest Scopo, they were
entitled to search both him and his 'grab space' in the
car[.]"); *United States v. McDow*, 206 F. Supp. 3d 829, 842
(S.D.N.Y. 2016) ("Once probable cause to arrest exists, officers
may search the defendant's person incident to the arrest.").[10]

    Finally, the court also concludes that once probable
cause was established, it is irrelevant whether Detective
Pugliese's search of defendant occurred prior or subsequent to
his arrest.  *See United States v. Wilson*, 94 F. App'x 14, 17 (2d
Cir. 2004) (summary order) ("The mere fact that the trooper

---

[10]    Furthermore, in an unpublished summary order, the Second Circuit has
also explained that an officer, upon observing individuals smoking marijuana
in a car in violation of federal regulations, can "for his own safety, as
well as to investigate further the drug offense, . . . pat down the occupants
of the car." *United States v. Thorpe*, 122 F.3d 1058, 1997 WL 434086 (Table),
at *2 (2d Cir. 1997).

reversed the procedure, conducting the search before the arrest, did not render it illegal as long as probable cause to arrest existed at the time of the search." (quoting *United States v. Ricard*, 563 F.2d 45, 49 (2d Cir. 1977))).  Accordingly, Detective Pugliese's pat down of defendant incident to defendant's arrest did not violate the Fourth Amendment.  The detectives had probable cause to arrest the vehicle occupants for marijuana possession and conduct a protective pat down, during which the gun and magazine were discovered on Mr. Daniels.  For the foregoing reasons, the court declines to suppress the magazine and firearm discovered during the pat down of defendant and, thus, denies defendant's motion to suppress.[11]

Furthermore, because the magazine and firearm were discovered through a lawful pat down of defendant based on the existence of probable cause to arrest him, the court also declines to suppress defendant's post-arrest statements as

---

[11]    Although the court concludes that the magazine and firearm were discovered lawfully following the pat down of defendant incident to his arrest, the court rejects the government's broad assertion that "[w]here officers have reason to believe that one person involved in a *Terry* stop is likely to be armed and dangerous, it is equally reasonable to believe those with whom that person is associating will also be armed and dangerous." (Gov. Supp. Mem. at 9-10, 19-20.)  In other words, the government appears to argue that Mr. Andino's alleged gang affiliation (and subsequent dangerousness) should be imputed to Ms. Gavin and defendant simply because they were in the same car.  The court declines to apply such a broad theory of dangerousness and reiterates that "[t]o justify a patdown of the driver or a passenger during a traffic stop, . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).  In any event, the court need not resolve the government's broad assertion because, for the reasons stated above, the magazine and firearm were lawfully discovered following a protective pat down of defendant incident to his arrest.

fruits from the poisonous tree.  (*See* Def. Supp. Mem. at 18-19
(citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).)
Though not applicable here, the exclusionary rule "reaches not
only primary evidence obtained as a direct result of an illegal
search or seizure, but also evidence later discovered and found
to be derivative of an illegality or 'fruit of the poisonous
tree.'"  *United States v. Cacace*, 796 F.3d 176, 188 (2d Cir.
2015) (quoting *Segura v. United States*, 468 U.S. 796, 804
(1984)).  Statements made during custodial interrogation are
generally inadmissible unless a suspect first has been advised
of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436
(1966).  Here, defendant was provided *Miranda* warnings after his
arrest and he knowingly and voluntarily admitted that the gun
and OxyContin were his.  (*See* ECF No. 3, at 8.)  Accordingly,
the suppression of Mr. Daniels's post-arrest statements is not
warranted under the fruit of the poisonous tree doctrine.

**IV.  The Magazine and Firearm Would be Inevitably Discovered**

        In its post-hearing brief the government argues that
even if the searches yielding the weapon and narcotics were
unreasonable, "the Court need not address the detectives' pre-
search pat down of the defendant and the other occupants of the
car, because the detectives would have inevitably discovered the
firearm on the defendant's person and the other contraband
inside the car when they searched it."  (Gov. Supp. Mem. at 20.)

34

Under the "inevitable discovery" doctrine, evidence obtained
during the course of an unreasonable search and seizure is
nonetheless admissible "if the government can prove that the
evidence would have been obtained inevitably" without the
constitutional violation.  *United States v. Heath*, 455 F.3d 52,
55 (2d Cir. 2006) (quoting *Nix v. Williams*, 467 U.S. 431, 447
(1984)).  "The government bears the burden of proving inevitable
discovery by a preponderance of the evidence." *United States v.
Stokes*, 733 F.3d 438, 444 (2d Cir. 2013).

As discussed above, having detected the odor of
marijuana and observed both Mr. Andino holding a lit marijuana
cigarette and two silver packages containing marijuana in the
back seat, the detectives had probable cause to search the
Altima.  If the detectives had asked defendant and the other
occupants of the Altima to step of the vehicle without patting
them down, it is certain that the detectives could have searched
the car and would have discovered the Oxycodone, marijuana, and
cash on the back seat, where the defendant was sitting.  (*See*
Tr. 75-77, 36; Gov. Exs. 7, 8, 9).  Accordingly, the defendant
and the other occupants of the car would have been placed under
arrest for the oxycodone and marijuana, at which time all three
would have been searched incident to their arrest. *See United
States v. Robinson*, 414 U.S. 218, 235 (1973) (holding that
lawful custodial arrest authorizes "a full search of the person"

35

arrested).  Thus, the magazine and the firearm in defendant's waistband inevitably would have been discovered.  *See, e.g., United States v. Santillan*, 902 F.3d 49, 59 (2d Cir. 2018) (currency illegally seized during pat-frisk for weapons was nonetheless "admissible because it would have been inevitably discovered during a search incident to arrest after the officers discovered cocaine in the car").  In conclusion, even if Detective Pugliese's conduct in patting down defendant was unreasonable, which it was not, the firearm and magazine would be admissible because they inevitably would have been discovered during a search incident to arrest after the detectives discovered the marijuana and OxyContin in the back of the Altima near where Mr. Daniels was sitting.

**CONCLUSION**

For the foregoing reasons, the court respectfully denies Mr. Daniels's motion to suppress.

SO ORDERED.

_____
                /s/
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:     October 7, 2021
           Brooklyn, New York