UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,

**ORDER**

      - against -               21-CR-81 (KAM)

JOVAN DANIELS,

          Defendant.

----------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

The government moves to preclude certain cross-examination of Detective-1, Detective-2, and Detective-3 of the New York City Police Department ("NYPD"), at a suppression hearing to be held on September 9, 2021.[1] (*See* ECF Nos. 30 Government's Motion in *Limine*, dated July 29, 2021 ("7/29/21 Mot."); Government's Motion in *Limine*, dated September 1, 2021 ("9/1/21 Mot."); ECF No. 33, Defendant's Opposition to Government's 7/29/21 Mot.; ECF No. 43, Defendant's Opposition to Government's 9/1/21 Mot.)[2] Specifically, the government seeks to preclude cross-examination relating to prior Civilian Complaint Review Board ("CCRB") complaints against Detective-1 and

---

[1]    The court identifies the detectives here using the same pseudonyms as in the complaint filed in support of the arrest warrant for the defendant. (*See* ECF No. 1.)

[2]    The government represents that it does not intend to call Detective-1 or Detective-2 as principal witnesses at the suppression hearing.  (7/29/21 Mot. at 2; 9/1/21 Mot. at 2.)

Detective-3, and NYPD Internal Affairs Bureau ("IAB") reports involving Detective-2 and Detective-3, contained in the *Giglio* material provided by the government.  The parties also jointly move for the court to take judicial notice of the weather in Brooklyn, New York, on January 2, 2021, the date of the defendant's arrest.  (ECF No. 41, Joint Motion in *Limine*, dated September 3, 2021 ("9/3/21 Mot.").)  The court assumes familiarity with the background and procedural history of this case.  For the reasons set forth below, the government's motions in limine are GRANTED.

## DISCUSSION

        The Confrontation Clause guarantees defendants the right to cross-examine government witnesses in order to test their truthfulness and discredit the witnesses by revealing the witnesses' "possible biases, prejudices, or ulterior motives" in relation to "the case at hand." *United States v. Figueroa,* 548 F.3d 222, 227 (2d Cir.2008).  Within the mandates of the Confrontation Clause, the court "may impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is ... only marginally relevant." *Figueroa*, 548 F.3d at 227 (citations and quotations omitted).  "A district court is afforded broad discretion in controlling the extent and scope of cross-examination." *United*

*States v. Wilkerson*, 361 F.3d 717, 745 (2d Cir. 2004) (citations and quotations omitted).  Cross-examination in general "should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness."  Fed. R. Evid. ("Rule") 611(b).

Where evidence of specific acts is offered to attack the witness's character for truthfulness, its admission is governed by Rule 608(b).  *United States v. Patterson*, 808 F.2d 969, 973-74 (2d Cir. 1987).  Rule 608(b), entitled "Specific instances of conduct," states in relevant part:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).  The court may, in its discretion, allow inquiry into specific instances of the conduct of a witness on cross-examination, but only if those acts are "probative of truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  "In addition to determining whether, on cross-examination, a particular prior act is probative of truthfulness and therefore permissible under Rule 608(b), the court still must be guided by Rules 611 and 403 in deciding whether to exercise its discretion

to allow cross-examination pursuant to Rule 608(b)." *United States v. Brown*, No. 07-cr-874 (KAM), 2009 WL 497606, at *4 (E.D.N.Y. Feb. 26, 2009); *see United States v. Devery*, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996) ("[E]ven if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403.").

## I.   CCRB Complaints against Detective-1 and Detective-3

The court concludes that cross-examination of Detective-1 and Detective-3 regarding the CCRB and IAB complaints shall be precluded.  First, with respect to the CCRB complaints involving Detective-1 and Detective-3, the court finds that the facts and circumstances underlying the CCRB complaints are neither relevant to this instant case nor indicative of the officers' credibility or propensity to tell the truth.

As a general matter, "[c]omplaints against officers are not probative of a law enforcement witness's truthfulness or untruthfulness unless the underlying conduct involves dishonesty." *Bryant v. Serebrenik*, No. 15-cv-3762 (ARR)(CLP), 2017 WL 713897, at *2 (E.D.N.Y. Feb. 23, 2017).  Several courts have precluded cross-examination regarding prior, substantiated instances of officer misconduct.  *See, e.g.*, *United States v. Horsford*, 422 F. App'x 29, 30 (2d Cir. 2011) (summary order)

4

(precluding cross-examination regarding CCRB complaint in which "the underlying conduct involved no dishonesty"); *United States v. Barret*, No. 10-cr-809 (KAM), 2012 WL 194992, at *1–2 (E.D.N.Y. Jan. 23, 2012) (precluding cross examination concerning several substantiated complaints, including prior false arrest, and refusal to provide name and badge upon request, because the complaints did "not involve conduct that bears on credibility"); *United States v. Stone*, No. 05-CR-401 (ILG), 2007 WL 4410054, at *1 (E.D.N.Y. Dec.14, 2007) (precluding cross-examination regarding unsubstantiated CCRB complaints).

Here, the CCRB complaint against Detective-3 involved an unwarranted search and frisk after Detective-3 pulled over a wrong vehicle. (*See* ECF No. 30-1, CCRB Report at 6-7.)  The CCRB complaints against Detective-1 involved Detective-1's incorrect understanding of an officer's authority under New York law to search a vehicle incident to the driver's arrest in 2006, and improper stop-and-frisk without sufficient reasonable suspicion in 2011.  (*See* ECF Nos. 30-2, CCRB Complaint at 12-13; 30-3 CCRB Complaint at 14-16.)

Upon review of the record and underlying facts of the CCRB reports, the court concludes that the CCRB's complaints and allegations are not relevant to the issue of the officers' credibility and, there is no basis under Rule 608(b) for the

defense to cross-examine the detectives regarding the CCRB complaints, the findings of the CCRB, or the events that underlay the CCRB proceedings.  In the instant case, Detective-3 approached the Altima because the occupants were observed smoking marijuana, not because the vehicle or occupants matched the description of a wanted vehicle or persons, as described in the CCRB complaint.  Further, although defendant's motion to suppress does dispute whether the officers had reasonable suspicion to conduct an investigatory stop, Detective-1 did not initiate the stop in this case (Detective-3 approached the parked vehicle in which defendant and other occupants were present), and only arrived on scene after the other detectives had directed the occupants to exit the vehicle, and the vehicle was searched after it was lawfully seized following the defendant's arrest.  In contrast, in the CCRB report involving Detective-1's unlawful search, the CCRB report substantiated that Detective-1 engaged in an unlawful search and improper stop-and-frisk without sufficient reasonable suspicion under circumstances distinguishable from the present facts.

Moreover, the CCRB did not make any adverse findings regarding Detective-1's and Detective-3's credibility and neither incident involves deceitful conduct.  *See Horsford*, 422 Fed. App'x at 30 ("[T]he CCRB report indicates that the underlying conduct involved no dishonesty. Therefore, the report

could not have been probative of [police officer defendant's] truthfulness or untruthfulness."). Thus, the CCRB complaints' allegations and the subsequent proceedings before the CCRB are not relevant to the issue of the detectives' credibility and there is no basis under Rule 608(b) for the defense to cross-examine the detectives regarding the CCRB complaints, the findings of the CCRB, or the events that underlay the CCRB proceedings. *See, e.g., United States v. Laster*, No. 06-cr-1064 (JFK), 2007 WL 2872678, at *2 (S.D.N.Y. Sept. 28, 2007) (precluding inquiry into a substantiated CCRB finding because it did not bear on the witness's credibility).[3] Any inquiry into these topics would only serve to confuse the issues and waste time as contemplated under Rules 403 and 611. Finally, as recognized by many other courts, "[t]he informal and non-adversarial nature of the CCRB investigative process further minimizes the probative value of cross examination of CCRB

---

[3]     Defendant's reference to a credibility finding in the CCRB report involving Detective-1 lacks context.  Defendant asserts that because the CCRB report notes that the officers' testimony was "relatively credible," defendant should be permitted to cross-exam Detective-1.  (*See* ECF No. 33 at 2-3.)  In relevant part, the CCRB report notes that the officers "provided relatively credible statements . . . [d]espite understandable confusion as to which officers specifically were involved in the struggle . . . and what role each of them played, their statements were detailed and mutually consistent." (ECF No. 30-2, at 12.)  Thus, the "relatively credible" finding is reinforced by the CCRB's conclusion the officers' statements were "detailed and mutually consistent."  (*Id.*)  For this reason and those explained above, the court rejects defendant's assertion that he is entitled to cross-exam Detective-1 regarding this irrelevant and dated CCRB report.

complaints." *United States v. Robinson*, No. 20-cr-415 (KMW),
2021 WL 3003939, at *1 (S.D.N.Y. July 12, 2021).

## II.   IAB Reports Involving Detective-2 and Detective-3

The government seeks to preclude defendant from cross-
examining Detective-2 and Detective-3 about the four
substantiated IAB reports by the NYPD Internal Affairs Bureau.
(9/1/2021 Mot. at 1.)  In March 2015, Detective-3 was involved
in a traffic incident and stop resulting in the death of a
pedestrian.  In substantiating two allegations for an incomplete
memobook and a violation of department rules and procedures, the
IAB report concluded that Detective-3 "failed to notify the
division dispatcher of the car stops and [the officers']
locations."  (ECF No. 40-1, IAB Report at 9.)  Another IAB
report concluded that Detective-3 committed an abuse of
department regulations when he misplaced his wallet containing
NYPD identification card and, thus, failed to safeguard NYPD
property.  (ECF No. 40-2, IAB Report at 6-7.)  Two IAB reports
concluded that Detective-2 failed to prepare a Threat,
Resistance and Injury report in connection with the execution of
a search warrant in February 2018, (ECF No. 40-3, IAB Report at
10-11), and also failed to properly voucher items in violation
of department regulations in March 2018.  (ECF No. 40-4, IAB
Report at 4-5.)

For substantially similar reasons as discussed above regarding the preclusion of the CCRB reports, the court similarly concludes that defendant shall be precluded from cross-examining the witnesses regarding the IAB reports produced to defendant.  Specifically, the court notes that the substance of the IAB reports describe substantiated allegations regarding the witnesses' violations of department policies involving paperwork and other administrative tasks.  It is undisputed that the IAB reports made no adverse findings against the officers and no credibility determinations.  *See United States v. Jackson*, No. 19-cr-356 (ARR), 2020 WL 6738155, at *2 (E.D.N.Y. Nov. 16, 2020) (precluding cross-examination of IAB cases because the reports "do not contain any findings related to the credibility of the officers"); *United States v. Johnson*, 469 F. Supp. 3d 193, 230 (S.D.N.Y. 2019) (precluding use of IAB reports that "made no adverse credibility findings against the officer" because the reports would "not measurably assist the jury in making a credibility determination").  For these reasons and those previously discussed above, the court grants the government's motion in limine and precludes the defendant from cross-examining the witnesses regarding this material.[4]  *See*

---

[4]     Furthermore, the court respectfully rejects defendant's assertion that this court should permit cross-examination into prior misconduct where no adverse credibility finding is expressly stated in the IAB report.  (*See* ECF No. 43 at 2.)  Defendant's unsupported assertion that Detective-3's March 2015 IAB report is relevant because Detective-3 failed to "notify the

*United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993) ("The scope and extent of cross-examination are generally within the sound discretion of the trial court, and the decision to restrict cross-examination will not be reversed absent an abuse of discretion."); *see also* Fed. R. Evid. 403, 608(b), 611.

**III.  Weather in Brooklyn on January 2, 2021**

The government requests, and the defendant does not object, to the admission of the National Weather Service ("NWS") data attached as exhibits A and B to the government's motion in limine, which indicate that the high temperature in Brooklyn on January 2, 2021 was 53 degrees Fahrenheit.  (9/3/2021 Mot. at 1.)  Federal Rule of Evidence 201 provides that the court may "judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

On January 2, 2021, NWS data indicates that the high temperature was 53 degrees Fahrenheit at John F. Kennedy

---

dispatcher as to the stop" in the instant case, appears to be contradicted by the record to the extent audio recordings of communications between the detectives and NYPD dispatch were produced to defendant.  (*See* ECF No. 32 at 2.)  In any event, even if Detective-3 failed to notify the dispatcher as to the stop, defendant fails to explain why this purported failure bears on Detective-3's credibility.  For these reasons and those stated above, the court finds that Detective-3's failure to contact a division dispatcher in March 2015 is not relevant to the issue of the detective's credibility.

International Airport ("JFK"), the nearest NWS weather station
to the location of the defendant's arrest in East New York.
(*See* ECF No. 41-1, Ex. A, Climatological Data for New York-
Kennedy Airport Area, January 2021.)  The NWS data is consistent
with hourly temperature data provided by Time and Date AS (*see*
ECF No. 41-3, Ex. C, Brooklyn Weather History for January 2,
2021), that the weather was between 47 and 49 degrees Fahrenheit
at approximately 3:40 p.m., *i.e.*, the time of the defendant's
arrest.  Accordingly, the court takes judicial notice that it
was between 47 and 49 degrees Fahrenheit at the time of
defendant's arrest because the weather data previously discussed
can be "accurately and readily determined" from reliable
sources.  *See Shane Campbell Gallery, Inc. v. Frieze Events,
Inc.*, 441 F. Supp. 3d 1, 3 (S.D.N.Y. 2020) (taking judicial
notice of temperature at Randall's Island, New York and citing
to NWS data).

## CONCLUSION

For the foregoing reasons, the government's motions in
*limine* to preclude cross-examination of the government's
witnesses regarding the *Giglio* materials is GRANTED.

SO ORDERED.

/s/
Hon. Kiyo A. Matsumoto
United States District Judge

Dated:     September 8, 2021
           Brooklyn, New York

11